UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KRISTEN M.OGDEN,

        Plaintiff,

                                   Case Number 06-11721-BC

v.                                   Honorable Thomas L. Ludington

SAINT MARY'S MEDICAL CENTER,
DAVID REVARD,

        Defendants.

_____ /

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S EXPERT, DENYING DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S EXPERT, AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In April 2006, Plaintiff Kristen Ogden filed suit against her former employer, Defendant St.

Mary's Medical Center (SMMC), and her former supervisor, Defendant David Revard. She alleges

violations of Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. § 2000e

*et seq*., and the Michigan Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101

*et seq.* Now before the Court are Defendants' motion for summary judgment, Defendants' renewed

motion to strike Plaintiff's proposed expert, and Defendants' motions to strike portions of Plaintiff's

responses to their two motions.

Plaintiff's claims of gender discrimination, *quid pro quo* sexual harassment, and retaliation

under Title VII are time-barred under 42 U.S.C. § 2000e-5(e)(1) and *Nat'l RR. Passenger Corp. v.

Morgan*, 536 U.S. 101 (2002), and Defendant's motion for summary judgment will be granted with

respect to these causes of action. In addition, Plaintiff has not demonstrated a *prima facie* case of gender discrimination in the circumstance of Defendant's workforce reduction, because she has not provided any evidence that her employer singled her out for discharge for impermissible reasons under *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990), and Defendants have advanced a legitimate, non-discriminatory reason for terminating her employment after a consulting company recommended eliminating the position that she performed.

Plaintiff's claims of gender discrimination, *quid pro quo* sexual harassment, and retaliation under the Michigan Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101 *et seq.*, are time-barred under Mich. Comp. Laws § 600.5805 and *Garg v. Macomb County Community Mental Health Serv.*, 696 N.W.2d 646 (Mich. 2005).

Those same limitations periods, however, permit claims of hostile work environment sexual harassment to survive under both Title VII and ELCRA, because Plaintiff has advanced some evidence that predates the limitations periods, demonstrating a work environment both objectively pervasive in its offensiveness and subjectively experienced as abusive by Plaintiff. Title VII does not permit individual liability, so all Title VII claims against Defendant Revard will be dismissed.

Regarding Defendants' motion to strike Plaintiff's proposed expert, the Court previously denied without prejudice to permit Defendants to offer any support for their challenges. In this supplemented motion, Defendants still have not raised a challenge to the reliability of Plaintiff's proposed economics expert's methodology or principles or demonstrated a lack of validation appropriate to that field, as required under Federal Rule of Evidence 702 in light of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Consequently, Defendants' motion to strike will be denied.

Finally, regarding Defendants' motion to strike portions of Plaintiff's response to Defendants' motion to strike Plaintiff's expert, the Court will deny that motion as moot, having reached a determination without relying on the passages to which Defendants object. Similarly, regarding Defendants' motion to strike portions of Plaintiff's response to Defendants' motion for summary judgment, the Court will deny in part that motion, because it has not relied on those passages in reaching its decision, but the Court will grant in part the motion as to three passages that Plaintiff misrepresents or where Plaintiff disregards the Federal Rule of Evidence.

I.

Plaintiff previously worked for Defendant SMMC as a security technician, which was essentially a clerical position.[1] Defendant Revard started as the security manager for Defendant SMMC in 2002.

According to Plaintiff, on May 3, 2002, Defendant Revard suggested that they go to lunch, and he drove them to Hooter's, a location possibly selected by her. Plaintiff states that she tried to include other co-workers, but that they did not join, and that Defendant Revard told her he usually took employees who were in for training (as she was that day) to lunch. She claims that he requested that she take her ID badge off while they were at the restaurant, so that they would not be identified as hospital employees. She alleges that, when the check came, he declined to let her pay, allegedly saying, "I don't expect you to put out on the first date but after the second you will have to." *Ogden Deposition*, p. 64; Dft. Mo. Br., Ex. A [dkt # 32-3].

In her deposition, she claims that over the next three months, Defendant Revard invited her

_____

[1]Plaintiff started working for Defendant SMMC in June 1997, became a security officer until March 1998, and then returned to her former role as a security technician.

to cook him his favorite dinner and to join him for golf. She maintains that he would call her at the office on an almost nightly basis for approximately a half-hour or more, sometimes to ask her out for a drink, sometimes to ask if she was happily married, and sometimes "just to hear [her] voice." *Id*. at p. 78. Once, she told him the location on which she and her husband were building a house, and Defendant Revard later called to say he had visited the property and made some observations about the construction. At some point, Defendant Revard called Plaintiff from Las Vegas and described how he was spending time with another woman for a few days there, even though his wife was already in that city. When Plaintiff expressed some measure of concern over that circumstance, Defendant Revard allegedly responded, "[Y]ou mean, you and I couldn't sleep in the same hotel room without sleeping together." *Id*. at p. 92. Purportedly, when Plaintiff changed the subject by stating that she was working as the acting coordinator,[2] Defendant Revard told her that she could not work in that capacity because she was unqualified.

She states that, on July 18, 2002, she reported his behavior to Jeff Koenig,[3] who allegedly warned her that reporting that conduct could make life difficult for her. She claims that she met with the engineering services director and Defendant Revard's direct supervisor, Bernard Delaney, on July 22, 2002 and told him about the above-described occurrences. According to Plaintiff, Delaney told her that he would need to contact Vicky Morley in the human resources department. She claims that he requested that she call him back later in the week to learn about the developments from that

[2]The parties do not describe the significance or role of this position, although one deponent indicated that the role did pay a higher hourly rate.

[3]Although it is not immediately clear from the statements of the parties or their supporting documentation, it appears that Koenig was a security officer, or at least not in a supervisory position over Plaintiff.

meeting. When Plaintiff later contacted him, she claims that he told her that Morley indicated that Plaintiff and Defendant Revard should work out their differences. She describes how Delaney expressed the opinion that she faced sexual harassment and sexual discrimination and then agreed that she could work as the acting coordinator. A few days later, Plaintiff claims that she was told that the human resources department directed Plaintiff and Defendant Revard to work out their differences.

Plaintiff alleges that, on July 29, 2002, during the course of her annual performance review, Defendant Revard stated that she should not have complained. She states that, on August 4, 2002, Defendant Revard demanded a meeting to resolve their differences. The next day, Plaintiff claims that she met with Morley, who indicated that she had no knowledge of Plaintiff's complaints against Defendant Revard. Plaintiff claims that no action was taken in response to those complaints.

On June 23, 2003, Defendant Revard allegedly reprimanded Plaintiff for leaving her baton on the desk, rather than having it on her person. According to Plaintiff, she had the permission of her acting coordinator not to wear her baton in the office, and she maintains that other employees similarly did not wear the baton but went undisciplined. She also claims that other women who wore a dress or revealing clothing were permitted not to wear a baton. She further asserts that Defendant Revard alluded to the fact that she could skip the baton if she wore a dress.

On September 23, 2003, Plaintiff received a notice of corrective action from Defendant Revard for her failure to attend a mandatory departmental meeting.

Plaintiff claims that, shortly before June 16, 2004, a copy of Maxim magazine was left on her desk. She asserts that, on June 23, 2004, she was reprimanded for threats in the workplace, unsatisfactory performance, and insubordination. She also believes that Defendant Revard retaliated

against her for her earlier reports of harassment by scheduling her to ensure babysitting conflicts. Plaintiff claims that, in March or April 2004 and again in October 2004, Defendant Revard instructed Plaintiff to change her ID badge photo, which was taken in profile, rather than face forward.

Plaintiff also alleges that a co-worker, Chris Wenzell, described to her how Defendant Revard directed him to draft a statement regarding how Plaintiff would read adult magazines at work. She maintains that Wenzell, out of a sense of conscience, told Plaintiff that he later withdrew the statement but that Defendant Revard then threatened him with a bad recommendation in another job application.

Plaintiff also provides a transcript of a conversation that she tape recorded on an unidentified date. She maintains that the conversation occurred with Paula Coffee, an employee in the human resources department. Plaintiff suggests that the transcript reveals the lack of concern for her complaints. The Court cannot discern, from its reading of the transcript, the basis for Plaintiff's characterization of the transcript, although the transcript would support concluding that she, in fact, had a conversation about the complaints.

In her complaint, Plaintiff states that, in April 2005, she wrote to the human resources department to alert them that co-workers were zooming security cameras in on patrons' private parts. On May 12, 2005, a human resources department representative allegedly contacted Plaintiff to discuss why she was reviewing security tapes without permission. In her response to the motion for summary judgment, Plaintiff does not repeat these allegations or provide any evidentiary support for them.

On April 15, 2005, a consulting company recommended, as a cost-saving measure, to

Defendant SMMC the elimination of the technician position. On May 17, 2005, Defendant SMMC informed Plaintiff that her job classification was eliminated, as recommended by the consulting company. On July 21, 2005, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC).

On January 13, 2006, the EEOC provided Plaintiff with a right to sue letter. On April 6, 2006, she filed the instant complaint, alleging violations of 42 U.S.C. § 2000e *et seq*., and ELCRA. Now before the Court are Defendants' motion for summary judgment under Federal Rule of Civil Procedure 56, Defendants' motion to strike Plaintiff's expert, Defendants' motion to strike portions of Plaintiff's response to Defendants' motion to strike Plaintiff's expert, and Defendants' motion to strike portions of Plaintiff's response to Defendants' motion for summary judgment.

The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *Compare* E.D. Mich. LR 7.1(e)(2).

## II.

Under Federal Rule of Civil Procedure 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the

"record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).

III.

A.

Plaintiff's complaint alleges largely undifferentiated violations of Title VII and ELCRA. Consequently, guided by Defendants' motion, the Court will review a variety of legal theories available in light of the facts alleged by Plaintiff, including gender discrimination, *quid pro quo* sexual harassment, hostile work environment sexual harassment, and retaliation, under both Title VII and ELCRA. Additionally, the Court will consider the availability of individual liability as to Defendant Revard.

1.

Regarding the limitation period applicable to a claim under Title VII, 42 U.S.C. § 2000e-5(e)(1) imposes a limitation period of 300 days for a person to file a complaint in this circumstance:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, *such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred* . . . .

(Emphasis added.)

In *Nat'l RR. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court upheld the dismissal of harassment claims based on events that occurred over 300 days prior to the plaintiff's filing of an EEOC complaint. In reaching that decision, however, the Court noted the difference between a sexual harassment claim based on discrete acts and based on a hostile work environment. *Id*. at 115. In determining whether a claim is one regarding a hostile work environment, a court must consider the entirety of the circumstances, including the frequency of the alleged discriminatory conduct, its severity, the risk of physical threat or humiliation (rather than a "mere offensive utterance"), and whether it unreasonably interferes with an employee's work performance. *Id*. at 116 (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). "A hostile work environment claim is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id*. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)). The Supreme Court held:

> Given, therefore, that the incidents comprising a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment.

*Id*. at 118.[4] Thus, the accurate but incomplete description of *Morgan* provided by Defendants does

[4]The Supreme Court provided the following helpful hypothetical examples to demonstrate the effect of its reasoning:

> The following scenarios illustrate our point: (1) Acts on days 1-400 create a hostile work environment. The employee files the charge on day 401. Can the employee recover for that part of the hostile work environment that occurred in the first 100 days? (2) Acts contribute to a hostile environment on days 1-100 and on day 401, but there are no acts between days 101-400. Can the act occurring on day 401 pull the other acts in for the purposes of liability? In truth, all other things being

not adequately address the distinction between discrete acts of discrimination, which are treated as time-barred even if events are similar or related, and a hostile work environment, which is one continuous act. *See also McFarland v. Ferguson*, 307 F.2d 402, 408 (6th Cir. 2002).

In *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S.Ct. 2162 (2007), the Supreme Court recently restated its interpretation of 42 U.S.C. § 2000e-5(e)(1), and it there refused to permit an employee to pursue a claim based on allegedly illegal pay discrimination, when the pay was received during the limitations period but the allegedly discriminatory decision occurred outside the limitations period. Because that case involved a series of discrete acts, the Court reiterated its position set out in *Morgan* as to that basis for a Title VII claim, but the Court provided no further guidance on hostile work environment claims, which were not advanced in *Ledbetter*.

Based on *Morgan*, as well as the language of 42 U.S.C. § 2000e-5(e)(1), Plaintiff's hostile work environment claim under Title VII is not time-barred. Importantly, her amended complaint, at ¶ 52, states a claim of sexual harassment based on a hostile work environment. At least one of the alleged acts – Defendant Revard's insistence that she retake her ID photo – occurred within the 300 days before she filed a complaint with the EEOC. That is, she filed that complaint on July 21,

---

equal, there is little difference between the two scenarios as a hostile environment constitutes one "unlawful employment practice" and it does not matter whether nothing occurred within the intervening 301 days so long as each act is part of the whole. Nor, if sufficient activity occurred by day 100 to make out a claim, does it matter that the employee knows on that day that an actionable claim happened; on day 401 all incidents are still part of the same claim. On the other hand, if an act on day 401 had no relation to the acts between days 1-100, or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee can not recover for the previous acts, at least not by reference to the day 401 act.

*Id*. at 118.

2005, and she alleged an act that contributed to a hostile work environment occurred in October 2004. Nor is evidence of the earlier acts of alleged sexual harassment time-barred, because Plaintiff's assertion that those acts created a hostile work environment advances only a single claim, rather than discrete acts that could be time-barred. Consequently, the limitations period of 42 U.S.C. § 2000e-5(e)(1) does not, on its face, require summary judgment for Defendants as to any claim of hostile work environment sexual harassment.

The foregoing analysis does not apply, however, to any other claims that Plaintiff has under Title VII, i.e., a claim of *quid pro quo* sexual harassment or retaliation. Those claims are not an ongoing circumstance like a hostile work environment. As distasteful, if true, as the events she alleges would be, she had not alleged an event that would support concluding that a discrete act of discrimination occurred within 300 days of her filing of the EEOC complaint. Accordingly, the limitations period of 42 U.S.C. § 2000e-5(e)(1) does apply to bar Plaintiff's claims under Title VII, apart from any claim for hostile work environment sexual harassment.

2.

Regarding the limitation period applicable to a claim of an ELCRA violation, in *Garg v. Macomb County Community Mental Health Serv.*, 696 N.W.2d 646, 657 (Mich. 2005), the Michigan Supreme Court overruled a prior decision that permitted a "continuing violations" exception to applying the limitations period in an employment discrimination case. The court proceeded to hold that Mich. Comp. Laws § 600.5805 required "a plaintiff to commence an action within three years of each adverse employment act by a defendant."[5]  *Id*. at 658.

---

[5]Mich. Comp. Laws § 600.5805, in relevant part, provides:

(1) A person shall not bring or maintain an action to recover damages for

Based on these principles, Plaintiff may not advance a claim that predates three years prior to her filing of this case. Because she filed her complaint here on April 6, 2006, she cannot bring suit for actions that occurred on or before April 6, 2003. Consequently, she cannot pursue a claim based on events that allegedly occurred in 2002, including the lunch at Hooter's, Defendant Revard's many phonecalls to Plaintiff at work, and the circumstances regarding her report of the situation to superiors at the hospital.

A bar on Plaintiff's ability to advance a sexual harassment claim under ELCRA based on those purported occurrences does not, however, bar her from presenting them as evidence in support of a claim that is not time-barred. As noted by the Michigan Court of Appeals in *Ramathan v. Wayne State University Bd. of Governors,* Unpublished Decision Docket Number 266238; 2007 Mich. App. Lexis 11, *7 (Mich. Ct. App. 2007), a footnote in the initial decision of the Michigan Supreme Court expressly rejected the proposition that "'acts falling outside the period of limitations' were admissible 'as background evidence in support of a timely claim.'" Subsequently, the court amended the decision by striking that footnote. *Garg v. Macomb County Community Mental Health Serv.*, 473 Mich. 1205 (2005). Consequently, this Court is persuaded that the rules of evidence apply to govern what evidence can support an employment discrimination claim.

---

injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.

* * *

(10) The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property.

Mich. Comp. Laws § 600.5827, in relevant part, provides that "claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results."

Here, Defendants have not advanced any evidentiary challenge to the evidence that predates the three-year limitation period. Rather, they contend that Plaintiff cannot advance a claim based on that evidence. While Defendants are correct on that point, that fact does not ensure that Plaintiff cannot present evidence of those occurrences to support claims that did occur within the limitation period. Plaintiff has advanced claims based on events that occurred in June 2003 and in 2004. Because those events can support a timely pursued claim, Plaintiff can offer evidence from on or before April 6, 2003 in support of her timely claims. Accordingly, the Court will not bar evidence of occurrences prior to April 6, 2003 that supports any timely filed claims of a violation of ELCRA, but the Court concludes that any claim based on an event that occurred on or before that date is barred under Mich. Comp. Laws § 600.5805.

3.

In the alternative, even if some of Plaintiff's claims under title VII were not time-barred, she would still need to make out a *prima facie* case of employment discrimination under Title VII – in a case that involves a workforce reduction. Additionally, Defendants have the opportunity to present a legitimate, non-discriminatory reason for terminating her employment.

42 U.S.C. § 2000e-2(a)(1) addresses claims of discrimination in employment and provides:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

A plaintiff may rely on direct or circumstantial evidence to demonstrate a Title VII claim. *See Johnson v. University of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000).

If a plaintiff presents direct evidence of discrimination, then a court need not employ the

framework of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), because the direct evidence eliminates the need for that inferential demonstration of discrimination. *See Blalock v. Metals Trades, Inc*., 775 F.2d 703, 707 (6th Cir. 1985) (citations omitted). "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 153 (2000); *see also Wright v. Murray Guard, Inc.*, 455 F.3d 702, 713 (6th Cir. 2006). Failure to prove an essential element of a *prima facie* case need not prove fatal, if a plaintiff can provide sufficient evidence of intentional discrimination. *See Noble v. Brinker International, Inc*., 391 F.3d 715, 721 (6th Cir. 2004). This burden of persuasion remains with the plaintiff. *Id*.

Without direct evidence, the burden-shifting analysis of *McDonnell-Douglas* will apply. *Johnson*, 215 F.3d at 573. First, a plaintiff must establish a *prima facie* case. "To make out a prima facie case for gender discrimination, a plaintiff must show that she was (1) a member of the protected class, (2) subject to an adverse employment action, (3) qualified for the job, and (4) treated differently than similarly situated male employees for the same or similar conduct." *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004) (citation omitted). Once a plaintiff establishes a *prima facie* case, then the defendant may respond by offering a legitimate, non-discriminatory reason for its employment action. *Johnson*, 215 F.3d at 573 (citation omitted). Then a plaintiff may rebut a defendant by demonstrating that the defendant's offered reason was only pretext. *Id*. (citation omitted).

Yet, in a case involving a workforce reduction, a plaintiff must include in her *prima facie* case "evidence indicating that the work force reductions are not the reasons for the discharge and therefore [can]not make out a prima facie case absent additional direct, circumstantial, or statistical

evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990) (citation omitted); *see also Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 547-548 (6th Cir. 2004). The Sixth Circuit described a workforce reduction as follows:

> A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Barnes*, 896 F.2d at 1465 (citation omitted).

Here, Plaintiff does not contest that this case involves a workforce reduction. Although the elimination of the security technician position, pursuant to the consulting company's recommendation, reached only three employees, Defendant did eliminate that position. Plaintiff has suggested that she believes that someone has replaced her at the desk, but she has offered nothing more than her own supposition. She has not provided admissible evidence to support her contrary view that the position was not eliminated, in the sense that she was replaced. Nor have Defendants addressed this possibility in their briefing. Thus, regardless of whether Plaintiff might succeed regarding the other elements of her *prima facie* case, she has not demonstrated the additional element required in workforce reduction cases. Specifically, she has offered no evidence to show that Defendant SMMC singled her out for discharge for impermissible reasons.

Additionally, Defendant SMMC has offered a legitimate non-discriminatory reason for her termination: the elimination of her position. Again, the consulting company made a recommendation to eliminate the security technician position, and Defendant SMMC followed that

recommendation. Plaintiff has offered no basis for concluding that this reason is pretextual.[6]

Thus, even if Plaintiff's non-hostile work environment sexual harassment claims under Title VII were not time-barred, Defendants would still be entitled to summary judgment, to the extent that Plaintiff advances a claim of employment discrimination based on gender under Title VII. Also, Plaintiff has offered no evidence to support the final element in a workforce reduction case, and Defendants have identified a legitimate, non-discriminatory reason for terminating her employment, which goes unrebutted by Plaintiff.

4.

Regarding any claim of hostile work environment sexual harassment under Title VII, "a plaintiff must show the following: (1) the employee was a member of a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the existence of employer liability." *Vickers v. Fairfield Medical Center*, 453 F.3d 757, 762 (6th Cir. 2005) (citation omitted). "[A]n employer is vicariously liable for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee." *Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999) (citations and internal quotations omitted).

To fall within the protection of Title VII, a claim of hostile work environment sexual harassment must be severe and pervasive enough to create an objectively hostile work environment

---

[6]The same legitimate, non-discriminatory reason for Plaintiff's termination still serves to rebut any *prima facie* case that she could establish under state law. Similarly, Plaintiff has offered nothing to suggest that that reason is pretextual under state law. Additionally, to the extent that any differences exist between federal and state law on a generalized claim of employment discrimination based on gender, the parties have not argued those differences.

and must be experienced subjectively by the plaintiff as abusive. *Harris v. Forklift Sys.*, 510 U.S. 17, 21-22 (1993). Rather than apply a precise, mathematical formula, a court must consider the totality of the circumstances, reviewing for factors including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. Also, the harassment must be ongoing, rather than a set of "isolated or sporadic" incidents. *Clark v. United Parcel Serv.*, 400 F.3d 341, 351 (6th Cir. 2005) (citation omitted).[7]

Defendants insist that only one event – Defendant Revard's comment about an exemption from wearing her baton if she wore a dress – falls within the limitations period, such that it alone must provide the basis for Plaintiff's hostile work environment sexual harassment claim. Yet, based on *Morgan*, a series of acts that create a work environment constitute one "practice." Plaintiff alleges that Defendant Revard required her to retake her ID photo, unlike another employee whose photo was similarly taken at an incorrect orientation, in October 2004. Under 42 U.S.C. § 2000e-5(e)(1), an event in October 2004 does fall within the 300-day limitation period that precedes Plaintiff's filing of a complaint with the EEOC.

Plaintiff does not make clear how a directive to retake her ID photo, standing by itself, constitutes sexual harassment. That act, however, when viewed in a light most favorable to the non-movant, could be part of a totality of circumstances of hostile work environment sexual harassment.

---

[7]Although the parties refer to both federal and state law, neither identifies or argues any meaningful differences between them. In fact, Defendants rely on their insistence that Plaintiff's claims are largely time-barred and then contend that only ELCRA governs the remaining claims. Regardless, given the similarity between these bodies of law and the fact that no parties' argument turns on any difference between them, apart from the limitations periods, the Court's analysis will not further differentiate between a hostile work environment sexual harassment claim under Title VII or under ELCRA. *Compare Chambers v. Trettco, Inc.*, 614 N.W.2d 910, 915 (Mich. 2000).

Although an incident in October 2004 falls far in time after the majority of Plaintiff's other allegations, a directive that selected her out from other employees (and on an issue related to her appearance) could be an element of a larger whole. In the context of the evidence of Defendant Revard's suggestive comments in phone calls and his remark at lunch, a selective order to Plaintiff from Defendant Revard, as she alleges occurred, could take on a different meaning. While the inference is less strong than the evidence in support of an ELCRA claim, as will be discussed below, the Court concludes that Defendants have not shown an entitlement to judgment as a matter of law regarding a hostile work environment sexual harassment claim under Title VII.

Under ELCRA, a different limitation period applies – three years before filing suit. Consequently, acts that occurred before April 6, 2003 can form the basis of her complaint and, as discussed above, evidence from an earlier date may support a timely claim. Consequently, several alleged events are timely and do suffice to support a claim of hostile work environment sexual harassment under state law: (1) a notice of corrective action from Defendant Revard for her failure to attend a mandatory departmental meeting from September 23, 2003; (2) a copy of Maxim magazine was left on her desk, shortly before June 16, 2004; (3) a reprimand for threats in the workplace, unsatisfactory performance, and insubordination on June 23, 2004; (4) Defendant Revard's comment regarding the option of wearing a dress rather than a baton, in March or April 2004; and (5) Defendant Revard's instruction that she retake her ID photo in March or April 2004, and again in October 2004. These claims, coupled with evidence that Plaintiff had previously reported harassment to supervisors at Defendant, does suffice to withstand summary judgment. In the face of these allegations, which do have evidentiary support, the Court concludes that Defendants have not shown that they are entitled to judgment as a matter of law on a hostile work

environment sexual harassment claim under ELCRA. Accordingly, the Court will deny Defendants'

motion, to the extent that Plaintiff has advanced a claim of hostile work environment sexual

harassment under Title VII or ELCRA.

5.

Regarding any claim that Plaintiff may assert of *quid pro quo* sexual harassment under

ELCRA, given that any claim by Plaintiff of *quid pro quo* sexual harassment under Title VII is time-

barred, Plaintiff could still attempt to pursue such a claim under state law, as long as she advances

the claim based on events that occurred after April 6, 2003.

Mich. Comp. Laws § 37.2103(i), in relevant part, provides:

> Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
> (i) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.
> (ii) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.

Under Michigan law, a plaintiff seeking to establish a claim of *quid pro quo* sexual harassment must

show: "(1) that she was subject to any of the types of unwelcome sexual conduct or communication

described in the statute, and (2) that her employer or the employer's agent used her submission to

or rejection of the proscribed conduct as a factor in a decision affecting her employment."

*Champion v. Nationwide Security, Inc.*, 545 N.W.2d 596, 600 (Mich. 1996) (citation omitted).

Plaintiff has maintained that several incidents occurred within the three-year limitations

period. None of those events, however, support a claim of *quid pro quo* sexual harassment. These

events include a June 23, 2003 reprimand from Defendant Revard for not wearing her baton, a copy

-19-

of a magazine left on her desk around June 16, 2004, a June 23, 2004 reprimand, a directive to have her ID photo retaken, in March or April 2004 and again in October 2004, and the termination of her employment on May 17, 2005. While those allegations might support a claim of hostile work environment sexual harassment, they do not support a claim of *quid pro quo* sexual harassment. Plaintiff's sole allegation regarding an event in which her response to Defendant Revard's unwelcome sexual communication might have factored into decisions regarding her employment – his comment at Hooter's – falls outside the three-year limitation period. Accordingly, the Court will grant Defendants' motion as to any claim that Plaintiff may have of *quid pro quo* sexual harassment under ELCRA.

6.

Regarding any claim of retaliation, given that Plaintiff's claim of retaliation under Title VII is time-barred under 42 U.S.C. § 2000e-5(e)(1), Plaintiff might still pursue a claim of retaliation under ELCRA. That state act bars an employer from "retaliat[ing] or discriminat[ing] against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." Mich. Comp. Laws § 37.2701(a).

A claim of unlawful retaliation requires a plaintiff to show "(1) that [s]he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Rymal v. Baergen*, 686 N.W.2d 241, 256 (Mich. Ct. App. 2004) (citation and internal quotation omitted). "To establish causation, the plaintiff must show that [her] participation in activity protected by the [ELCRA] was a 'significant

factor' in the employer's adverse employment action, not just that there was a causal link between the two." *Id.* at 257. Close temporal proximity can suffice, if the evidence suggests that the employer acted with a discriminatory basis.

Once again, Plaintiff has not identified actions that fall within the limitations period that can support her claim. Although events prior to the limitations period can provide evidence in support of a claim that occurred within the limitations period, under *Garg*, none of Plaintiff's allegations regarding events that follow April 6, 2003 establish that she engaged in protected activity. Consequently, she has not offered evidence that a causal connection existed between her termination and that protected activity. As previously described, Plaintiff has alleged several events within the state law limitations period: (1) a June 23, 2003 reprimand from Defendant Revard for not wearing her baton; (2) a copy of a magazine left on her desk around June 16, 2004; (3) a June 23, 2004 reprimand; (4) a directive to have her ID photo retaken, in March or April 2004 and again in October 2004; and (5) the termination of her employment on May 17, 2005. None of these occasions involves protected activity. Her reports to her supervisors occurred in July 2002.

She has also provided an undated transcript of a conversation that she alleges occurred with a human resources representative at some point in 2005. While that conversation would be timely, if it occurred in the time frame she alleges, even if the transcript was admissible evidence, the conversation provides no basis for asserting the existence of any causal connection. More importantly, she leaves that argument to the Court to imagine on her behalf, instead choosing to emphasize that where motive is at issue, the question must go to a jury. In support of this contention, Plaintiff relies on a case from the Eastern District of Michigan, rather than on Michigan law.

Thus, Plaintiff has not identified any record evidence to support several elements of an ELCRA retaliation claim: engaging in a protected activity, Defendants' knowledge of that activity, or a causal connection between protected activity and the termination of her employment. Accordingly, the Court will grant Defendants' motion as to Plaintiff's claim of retaliation under ELCRA.

7.

Regarding individual liability under Title VII, Defendant Revard advances an additional basis for granting him summary judgment. In *Wathen v. General Electric Co.*, 115 F.3d 400, 406 (6th Cir. 1997), the Sixth Circuit held that Title VII did not impose individual liability, concluding instead that the statute targeted employers via respondeat superior and not their agents as individuals. Accordingly, the Court will grant Defendants' motion for summary judgment as to any Title VII claims against Defendant Revard.

B.

On June 11, 2007, the Court denied without prejudice Defendants' previous motion to strike Plaintiff's proposed expert. As discussed in that order, Plaintiff's proposed expert, Dr. Frank Stafford, is an economics professor at the University of Michigan, formerly chaired the department, and holds a Ph.D. and M.B.A. from the University of Chicago. He provided a report estimating the lifetime income and benefits loss to Plaintiff. In the previous order, the Court noted that Defendants provided no basis, such as a resource specific to that field or their own expert, for challenging to Plaintiff's expert's methodology or principles. Although Defendants criticized the selection of certain assumed values or the selection of particular financial information as relevant over other data, Defendants did not suggest that the fundamental approach taken by Plaintiff's proposed expert

departed from accepted practice in the field of economics.

Defendants have now filed a supplemental motion to strike, offering nearly identical arguments as in their former motion. They have, however, supplemented this motion with (1) deposition testimony from Plaintiff's proposed expert, which demonstrates that he relied on statistical projections about the value of Plaintiff's future income and benefits rather than actual data on about her particular circumstance, and (2) an affidavit from Calvin A. Hoerneman, a member of the National Association of Forensic Economists.

Hoerneman, a professor of economics at Delta College in Michigan, attests to all the purported defects previously argued by Defendants, such as the use of flat rates for fringe benefits and wage increases, almost without elaboration. He states that, in his professional opinion, Plaintiff's proposed expert's report "is not based upon 'scientifically valid' reasoning and methodology and is not based upon sufficient factual data that pertains to . . . Plaintiff's actual facts, making it misleading and unreliable expert testimony." *Hoerneman Affidavit*, Dft. Mo. to Strike Pl. Expert, ¶ 10 [dkt #47-5]. He further states that the proposed expert "appears to be using a data set that is over 25 years old and, to my knowledge, is not being used by forensic economists in calculating future economic wage losses for a party when actual data on a person's work life and earning history is known." *Id*. at ¶ 11. Beyond those statements, Hoerneman offers no further explanation of his disagreement with Plaintiff's proposed expert.

As the Court articulated in the earlier order on Defendants' nearly identical prior motion, Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient

facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Supreme Court stated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), that the trial court must ensure not only the relevance, but also the reliability of scientific testimony or evidence. Proposed testimony must be supported by validation appropriate to that field. *Id*. at 590. This reliability, stemming from the knowledge and experience of a particular discipline, provides the basis for relaxing the usual requirement of firsthand knowledge and permitting experts to opine with wider latitude. *Id*. at 592. Ultimately, a court's "focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Id*. at 595.

Subsequently, in *Kumho Tire Ltd., Co. v. Carmichael*, 526 U.S. 137, 141 (1999), the Supreme Court further held that "*Daubert*'s general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Thus, the requirements of *Daubert* apply to experts, even if their expertise is not scientific. In considering a challenge to a damages expert, courts will review both the expert's qualifications and the methodology for assessing damages, including such measures as pre- and post-trial actual and expected earnings and any relevant discounting. *See generally* Robert E. Hall and Victoria A. Lazear, *Reference Guide on Estimation of Economic Losses in Damages Awards*, *in* Reference Manual on Scientific Evidence 277 (Fed. Judicial Ctr. ed. 2000).

Here, Defendants have offered a modest challenge to the methodology or principles of Plaintiff 's proposed expert. They have offered the Court an affidavit of a forensic economist who

faults the proposed expert for not using data specific to Plaintiff and for using a data set that is allegedly out of date. Defendants' affiant offers only his contrary assertion and no rationale. At best, Defendants have identified an individual who might offer competing expert testimony. Defendants' sole substantiated basis for challenging Plaintiff's proposed expert, Hoerneman's affidavit, provides the Court little assistance in its role as gatekeeper, with an obligation to assess the reliability of scientific testimony or evidence. The terse contrary assertions of Defendants' affiant do not, in the Court's view, prevent the conclusion that Plaintiff's proposed expert's report is supported by validation appropriate to the field of economics. On that basis, the Court will deny Defendants' motion to strike Plaintiff's expert.

## C.

Finally, Defendants have elected to tack onto the thorough and careful analysis of their motion for summary judgment a motion to strike portions of Plaintiff's response to their motion as inadmissible. Additionally, Defendants also filed a motion to strike portions of Plaintiff's response to Defendants' motion to strike Plaintiff's expert. In these motions, Defendants seek to have stricken several instances of deposition quotations that they maintain are misleading and/or inadmissible as hearsay, as well to disqualify Plaintiff's counsel, apparently for using a hypothetical example involving his pet.

The Court will continue to cast a critical eye on excerpts of record testimony that on their face, as well as in context, are misrepresented, misleading, or completely inaccurate, and the Court disfavors reliance on inadmissible evidence, which invites an abuse of the standards appropriate to summary judgment. Regardless of whether any such defects occurred in the instant filings, however, the passages and objections noted by Defendants have not formed the basis of the Court's opinion

above. Accordingly, the Court will deny as moot Defendants' motions to strike portions of Plaintiff's responses to their other motions, apart from the exceptions noted below.

Some passages in Plaintiff's response, however, stand out for their more apparent disregard for either the facts, as attested, or for the Federal Rules of Evidence. For instance, Plaintiff's response brief to Defendant's motion for summary judgment states, on p. 4, that Defendant Revard told Plaintiff he loved her. The complete passage of the deposition relied upon by Plaintiff makes clear that Defendant Revard's statement applied to a different woman than Plaintiff. *See Revard Dep.*, p. 32; Pl. Rs. Br., Ex. 3 [dkt #48-4]. Also, Plaintiff's response brief, on p. 4, states that co-workers began to refer to her as Defendant Revard's wife. Again, the complete passage of the deposition relied upon by Plaintiff makes clear that co-workers joked about Plaintiff being the wife – of someone other than Revard. *See Pl. Dep.*, p. 85; Pl. Rs. Br., Ex. 1 [dkt #48-2]. Finally, on p. 8 of her response brief, Plaintiff seeks to rely on her own testimony that one of her co-workers told her that Defendant Revard threatened him with a poor job recommendation. Defendant correctly challenges this statement as double-hearsay. Although Plaintiff would rely on Federal Rule of Evidence 801(d)(2)(D), the co-worker's report of Defendant Revard's statement does not fall within the scope of the co-worker's employment, so hearsay exclusion does apply. Consequently, the Court will grant in part Defendants' motion to strike portions of Plaintiff's response to Defendants' motion for summary judgment.

## IV.

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment [dkt ## 48, 32] is **GRANTED IN PART** and **DENIED IN PART**. Defendants' motion is **GRANTED** as to Plaintiff's claims of gender discrimination, *quid pro quo* sexual harassment, and retaliation under

Title VII and ELCRA, **DENIED** as to Plaintiff's claim of hostile work environment sexual harassment under Title VII as to Defendant SMMC, **GRANTED** as to Plaintiff's claim of hostile work environment sexual harassment under Title VII as to Defendant Revard, and **DENIED** as to Plaintiff's claim of hostile work environment sexual harassment under ELCRA as to all Defendants.

It is further **ORDERED** that Defendants' motion to strike Plaintiff's expert [dkt #47] is **DENIED**.

It is further **ORDERED** that Defendants' motion to strike portions of Plaintiff's response to Defendants' motion to strike Plaintiff's expert [dkt#58] is **DENIED** as moot.

It is further **ORDERED** that Defendants' motion to strike portions of Plaintiff's response to Defendants' motion for summary judgment [dkt#59] is **GRANTED IN PART** and **DENIED IN PART**. The portions of Plaintiff's response to Defendants' motion for summary judgment, identified in §§ A, B, and E of Defendants' motion to strike portions of Plaintiff's response to Defendants' motion for summary judgment, are **STRICKEN**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 19, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 19, 2007.

s/Tracy A. Jacobs
TRACY A. JACOBS